Karen L. Hoffmann, Esq.
**ELLENBERG LAW GROUP**
**ID No. 203412022**
**1500 JFK Blvd. Suite 1825**
**Philadelphia, PA 19102**
**(215) 790-1682**
**karen@sellenberglaw.com**                    *Attorneys for Plaintiff John Cossaboon*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOHN COSSABOON,** ) | |
| ) | **Case No. 1:25-cv-02110-RMB-AMD** |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | |
| **CHARLES E. ALBINO; CFG HEALTH** ) | |
| **SYSTEMS, LLC; AND APRIL MUNSON,** ) | |
| ) | |
| *Defendants.* ) | |

**SECOND AMENDED COMPLAINT**

## I.    INTRODUCTION

In 1976, the Supreme Court held that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The Fourteenth Amendment affords pretrial detainees protections "at least as great as the Eighth Amendment protections available to a convicted prisoner," *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987). The Third Circuit has found deliberate indifference where a prison official:

> (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. … We also have found 'deliberate indifference' to exist where the prison

> official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'

*Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (internal citations omitted). The Due Process Clause of the Fifth Amendment guarantees that individuals in the custody of the United States will not be subject to criminal punishment without due process of law.

NOW COMES the Plaintiff John Cossaboon, through undersigned counsel, and alleges and avers the following:

## II.    JURISDICTION AND VENUE

1.    Plaintiff John Cossaboon brings this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.*, to exercise his constitutional right against conditions of confinement that violate his Fourteenth and Fifth Amendment rights under the Constitution, his rights under the ADA, and New Jersey state law.

2.    This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, § 1343(a)(3), § 1343(a)(4), and § 1367(a) regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3.    Venue in the District is properly laid pursuant to 28 U.S.C. § 1391, insofar as the alleged unlawful conduct asserted in this Complaint, which forms the factual and legal basis of the Plaintiffs claims, arose within the geographical limits of this District in general and within the geographical limits of Cumberland County, New Jersey, in particular.

## III.    PARTIES

4.    Plaintiff John Cossaboon (hereinafter "Mr. Cossaboon" or "Plaintiff") is an adult individual with a home address of 357 Fairton Millville Road, Bridgeton, NJ 08302. At all times

relevant hereto, Plaintiff was medically disabled by virtue of his serious, chronic health conditions.

5.    Defendant Charles E. Albino is an adult individual with a business address of 554 West Broad St, Bridgeton, NJ 08302. He is sued in his individual capacity. As director of the Cumberland County Jail, Defendant Albino, acting under color of state law, was responsible for the day-to-day control and oversight of the facility and of the training of jail staff, during the time period that Plaintiff was detained at the Jail.

6.    Defendant CFG Health Systems, LLC (hereinafter "CFG Health Systems" or "CFG"), is a corporation with a business address of 771 East Route 70, Suite D-125, Marlton, NJ 08053 which, at all times relevant and material to this action, acted through its agents, servants, employees and representatives acting in the course and scope of their employment pursuant to official policies, practices and customs of CFG Health Systems, LLC.

7.    Defendant April Munson is an adult individual residing at 409 Fork Bridge Road, Pittsgrove, NJ 08318, and is being sued in her individual capacity. At all relevant times hereto, Munson acted within the scope of her capacity as an employee of Defendant CFG Health Systems.

## IV.    FACTUAL ALLEGATIONS

8.    On September 21, 2021, Plaintiff was in a motor vehicle accident that caused severe injuries to his lower extremities. He received medical treatment for these injuries throughout 2022 and early 2023. On March 23, 2023, Plaintiff underwent surgery to lengthen his left Achilles tendon.

9.    After his March 23 surgery, Plaintiff received detailed aftercare instructions from his medical provider, which he intended to dutifully follow in order to recover from the surgery with

the best possible outcome. The detailed aftercare instructions included, but were not limited to, a requirement that the Plaintiff wear a medical cast after the surgery, avoid bearing weight on his left ankle entirely, engage in physical therapy exercises, and return to the doctor in 14 days so that his surgical stitches might be removed.

10.    Five days after the surgery, on March 28, 2023, the Plaintiff was arrested by agents of the Vineland Police Department. During his arrest, the agents transported Plaintiff to the Vineland Medical Center.

11.    At Vineland Medical Center, Plaintiff complained of increased pain in his left foot following the surgery on it. Dr. Eric P. Blazar diagnosed Plaintiff with a postoperative infection and prescribed him 500mg of Keflex, an antibiotic medication, three times a day.

12.    Plaintiff was given patient education materials on how to care for a postoperative wound showing signs of infection, instructing Plaintiff to, among other things, "clean the wound each day" and "keep all follow-up visits as told by your doctor."

13.    Plaintiff was given further patient education materials that stated: "Please follow-up with your primary care provider in 2-3 days. Return to the ER with any worsening or new symptoms. Take all medications as previously prescribed."

14.    Plaintiff had a consultation with podiatrist Dr. Michael G. Welch at Vineland Medical Center who recommended that he "remain strictly NWB [non-weight bearing] to the LLE [left lower extremity] in a splint at this time." Dr. Welch also recommended that the Plaintiff attend his outpatient follow-up with his orthopedic doctor Dr. Ken Graff the following week.

15.    At Vineland, medical professionals removed the Plaintiff's cast, apparently to search for contraband at the direction of police. Instead of replacing the Plaintiff's medical cast, Plaintiff's

ankle was wrapped with an elastic bandage wrap which, unlike the cast, did not stabilize Mr. Cossaboon's ankle per his doctors' post-surgery advice.

16.    Plaintiff was then transported to the Cumberland County Superior Court Jail ("Cumberland County Jail"), where he was held for around thirty (30) days in pretrial detention.

17.    Defendant CFG Health Systems is a private medical care provider who has provided medical and mental health services at the Cumberland County Jail since 2013. Defendant April Munson is a Nurse Practitioner who worked for CFG Health Systems at the time of the events in this complaint.

18.    Over the course of the next 30 days, Defendant Albino, Defendant CFG, and Defendant Munson did not allow the Plaintiff to follow up with his primary care provider. Nor did they allow him to return to the emergency room even as his symptoms worsened, nor allow him access to the medications he was prescribed. These actions constitute denials of medical care.

19.    Plaintiff was not allowed to shower or otherwise bathe himself for at least the first 20 days of his incarceration, and he was never given a change of clothes.

20.    Plaintiff reports that other detainees were allowed to access the showers; however, the showers were inaccessible to him because they would require him to stand up out of his wheelchair, which he could not do with his disability. No accommodations, such as a shower chair, were provided to Plaintiff that would have allowed him to take a shower.

21.    Even though Plaintiff was instructed to change his wound dressings daily by the Vineland Medical Center doctor, Plaintiff was denied the materials to re-dress his wound dressings every day. In fact, Plaintiff estimates that he was only given new wound dressings two or three times over the month he was incarcerated. This failure to give Plaintiff adequate wound care constituted denial of medical care.

22.    Plaintiff reports that nobody at the Jail or with CFG helped him clean and re-dress his surgical wound, and he was made to do so himself as a result of the denial of medical care.

23.    Plaintiff's denial of medical care in the form of being denied proper hygiene and wound care made him more susceptible to infectious disease in his exposed surgical wound. Plaintiff subsequently experienced chronic infection in the surgical wound.

24.    Plaintiff was not allowed to see a doctor, let alone his surgeon, until he was released from the Cumberland County Jail.

25.    Plaintiff's stitches were removed only after he was released from the Cumberland County Jail, more than 30 days after his surgery, whereas his surgeon's instructions specified they were to be removed after 14 days. This, too, made Plaintiff more susceptible to infectious disease in his exposed surgical wound.

26.    Plaintiff repeatedly requested from Defendant CFG a medical evaluation at a hospital outside of the Cumberland County Jail, and his requests were repeatedly denied or ignored.

27.    Plaintiff was not allowed to fully communicate with his doctors. Plaintiff was only allowed one phone call per week, which he utilized to tell his doctors that his missed appointments were due to his incarceration. Plaintiff was precluded from communicating with the medical professionals who were best informed about the proper course of treatment in his case.

28.    A Medical Department Request Form from April 19, 2023, filed by Plaintiff while incarcerated in the Cumberland County Jail, states as follows in the space designated for "Reason for the request:" "Mrs. April Munson, I am not allowed any antibiotics. Zero. Per infections disease of Cooper Hospital, Camden, NJ. Please prescribe the medications the doctors

have prescribed. My surgery was successful, now a failure due to foot not recasted [sic] on 3/27/23 when cut off, also my stitches grew in. Were to removed [sic] on 4/3/23."

29.     Another Medical Department Request Form, filed by Plaintiff while incarcerated in the Cumberland County Jail states as follows in the space designated for "Reason for the request": "To see psych DR + too [sic] have stitches removed + have foot casted [sic]. Stitches were to be removed on April 3, 2023. Today is April 22, 2023. Also cast was removed on March 27, 2023 [sic] and never put back on."

30.     A third Medical Department Request Form filed by Plaintiff on April 22, 2023, states as follows in the space designated for "Reason for the request": "Would like to see psych doctor. Also need to have stitches removed. Supposed to be removed on 4/3/23, 19 days ago. Also to have foot recasted. Cast was cut off on 3/27/23 [sic] and never put back on, causing the successful surgery to become a failure. Mrs April [Munson] refuses to give me my pain pills, wrongfully gives antibiotics… please help."

31.     By the time Plaintiff was released from Cumberland County Jail on April 24, 2023, having had his medically necessary surgical cast removed and not replaced, having missed several follow-up appointments with his surgeon, having been forced to bear weight on an extremity that had undergone surgery less than a week prior, having had surgical stitches remain inside his body for more than two weeks longer than recommended by his surgeon, and having been denied the right to bathe himself and thus unable to keep his surgical wound clean and dressed,  Plaintiff's surgical wound expanded greatly in size and became seriously and chronically infected.

32.     Upon Plaintiff's release from incarceration, he went to the hospital and was hospitalized for a surgical site infection on his left foot April 28 to April 29, 2023, and again from April 30, 2023 until May 5, 2023.

33.     A report from a surgery follow-up appointment on May 9, 2023, written by Kenneth Graf, MD, states: "Unfortunately, [Plaintiff] was doing great until he went to jail and lost his boot. He was arrested 4 days after his surgery and was in jail for 30 days, during which time he did not have any rehab for his foot. His walking boot was confiscated. His forearm crutches are also damaged. The police had the cast cut off and wrapped it with a bandage. The stitches were left in. The patient was told that this had caused some cellulitis. He is able to do whatever he wants to do, but it hurts and burns. The patient is unable to put any weight on the foot due to pain."

34.     A report from an office visit at the Cooper Multi-Specialty Center at Camden Campus on December 1, 2023, notes that Plaintiff "was incarcerated where cast/splint was removed and wound was open to air."

35.     Plaintiff's medical history reflects that his left heel remains chronically infected since acquiring an initial infection in the Cumberland County Jail. The wound has grown in size and has been infected for almost two years at this point, as a direct result of the treatment sustained by Plaintiff at the Cumberland County Jail, under the direction of Defendant Albino as well as CFG Health Systems and their agents, including April Munson.

36.     A report from an August 13, 2024, appointment for orthopedic care and a wound check on the left foot, signed by Kenneth Graf, MD, states that "the [March 24, 2023] operation was successful, but [Plaintiff] ended up being incarcerated and lost all of the rehab on it."

37.     Plaintiff now requires revision surgery on his left foot.

38.     An investigation conducted by the U.S. Department of Justice's Civil Rights Division and the U.S. Attorney's Office for the District of New Jersey concluded that there was reasonable cause to believe that Cumberland County has a pattern and practice of violating the Eighth and Fourteenth Amendments of the Constitution because of a pattern of institutional failures relating to the Cumberland County Jail's healthcare system.[1]

39.     In a complaint dated May 17, 2023–less than two months after the beginning of Plaintiff's detention–the Attorney General of the United States of America, upon the information gathered during the USDOJ's Civil Rights Division and the New Jersey USAO investigation, wrote that "[i]ncarcerated persons [at CCJ] often experienced delays in treatment, poor continuity of care, and minimal access to higher levels of care" and that "[Cumberland County] ha[s] been deliberately indifferent to the health and safety of incarcerated persons by failing to adequately address the conditions described."[2]

40.     Defendant Munson has been previously alleged to have violated inmates' Fourteenth Amendment rights to adequate medical care by failing to properly evaluate inmate injuries and continuing medical treatment she knew to be ineffective. See *Rodriguez v. Tirado, et al.*, Civ. 22-1376 (RMB-MJS) (D.N.J. Apr. 28, 2022); see also *Huggins v. Warren, et al.*, Civ. 21-16688 (KMW-SAK) (D.N.J. 2021); see also *Ortiz v. Cumberland County Freeholders*, Civ. 21-17896 (D.N.J. 2021).

41.     Defendant CFG Health Systems has been involved in multiple litigation matters alleging that CFG Health Systems violated the civil rights of individuals under its care. See *The Estate of Carlos Borroto et al. v. CFG Health Systems, LLC, et al.*, Civ. 19-17148 (MCA-JBC) (D.N.J.

---

[1] "Department of Justice Alleges Conditions at Cumberland County Jail Violate the Constitution," United States Attorney's Office, District of New Jersey (Jan. 14, 2021) https://www.justice.gov/usao-nj/pr/department-justice-alleges-conditions-cumberland-county-jail-violate-constitution.
[2] Complaint at 13, 19, *United States vs. Cumberland County Jail*, No. 1:23-cv-02655 (D.N.J. May 17, 2023).

2024); see also *The Estate of Gregory Kubiak, et al. v. CFG Health Services, LLC, et al.*, Civ.

20-9478 (NLH-KMW) (D.N.J. 2021) [non-exhaustive list].

42.     The acts of the defendants, as described above, were performed with malice and

premeditation, under color of state law, with a willful and wanton disregard for the Mr.

Cossaboon's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States

Constitution, and in contravention of the letter and spirit of 42 U.S.C. §§ 1983, 1985, and 12101

*et seq*.

43.     From March 28, 2023, through April 24, 2023, and at all times relevant and material to

this action, Defendant Director Albino created and/or permitted a policy, practice, or custom in

the jail under which unconstitutional acts were perpetrated on Plaintiff, including the denial of

medical care by Defendants CFG and April Munson.

44.     As a direct and proximate result of the acts, and omissions committed by the named

Defendants herein, as detailed above, and as further articulated in the paragraphs which follow,

Mr. Cossaboon was caused to suffer, *inter alia*, the following harms, injuries and damages, some

or all of which may be permanent and/or continuing in nature:

    a.  Loss of liberty;

    b.  Severe and chronic pain and injury;

    c.  Emotional distress and anguish;

    d.  Loss of life's pleasures; and

    e.  Loss of employment, income, and shortening of economic horizons.

45.     At all times during the events described herein, Defendants were engaged in one or more

joint ventures which combined to produce the Constitutional violations and other harms asserted

herein. The Defendants assisted each other in performing the various actions described, and lent their physical presence, support, and/or authority to one another.

46.     Mr. Cossaboon further believes and therefore avers that without the intervention of this Court, he, as well as others, may suffer from state and federal rights violations similarly and that, consequently, injunctive relief is demanded, and required.

47.     Defendants, at all times pertinent to the claims asserted herein, acted under the color of law. Their conduct violated clearly established statutory or constitutional rights, and a reasonable person would have known of that right.

48.     While acting under color of law, the Defendants deprived Mr. Cossaboon of various state and federal Constitutional rights, as more fully set forth herein.

**COUNT ONE**

**42 U.S.C. § 1983**

**Deliberate Indifference to Serious Medical Need in Violation of
Plaintiff's Fourteenth Amendment Rights
(All Defendants)**

49.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

50.     Under the Fourteenth Amendment, corrections officials are required to provide for the reasonable health and safety of persons in pretrial custody. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003).

51.     Under the Eighth and Fourteenth Amendments, the government must provide incarcerated or detained persons with reasonable safety and address serious medical needs that arise in jail. *Id*.

52.     Defendants Munson and Defendant CFG Health System were acting under the color of law to provide medical care to inmates, such as Plaintiff, housed at the Cumberland County Jail.

53.    As director of the jail, Defendant Albino bore an affirmative obligation to provide adequate medical care to Plaintiff, and delegated that function to Defendants CFG Health System and April Munson, who voluntarily assumed that obligation by contract.[3]

54.    Each and every one of the named Defendants listed above was under a constitutional duty to provide reasonable adequate medical care to Plaintiff, an inmate in their charge.

55.    While incarcerated at the Cumberland Jail, Plaintiff required medical care for the postoperative wound on his foot, including but not limited to physical rehabilitation, wound care, and surgical aftercare.

56.    Wound care for Plaintiff's postoperative surgical wound was a serious medical need.[4]

57.    Interfering with the postoperative course of treatment prescribed to Plaintiff merely four days prior to his incarceration and intentionally denying Plaintiff access to that course of treatment was an act of deliberate indifference towards Plaintiff's serious medical needs.[5]

58.    Defendant April Munson exercised deliberate indifference and negligence in failing to provide adequate medical care to Plaintiff through failing to properly diagnose and treat Plaintiff's wounds, failing to and/or refusing to provide proper wound care, failing to timely transfer Plaintiff to a medical facility for scheduled follow-up surgery appointments equipped to provide Plaintiff with the medical care required, failing to follow the follow-up surgical instructions provided by Plaintiff's prior doctor, failing to provide Plaintiff with clean wound

---

[3] *See West v. Atkins*, 487 U.S. 42, 51, 54 (holding that a private doctor contracted to provide medical services to a prison population was acting under color of law and holding that medical personnel and other prison officials act in a joint effort to provide medical care to inmates).

[4] "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard,* 492 F. App'x 230, 236 (3d Cir. 2012). *See Huggins v. Warren*, Civil Action No. 21-16688 (KMW) (SAK), 2023 U.S. Dist. LEXIS 64521 (D.N.J. Apr. 11, 2023) (holding that visibly bandage-wrapped wounds indicate a clear medical need).

[5] "[P]rison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or interfering with the treatment once prescribed.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal citation omitted).

dressings, failing to regularly change Plaintiff's wound dressings, failing to administer the proper medications for wound care, failing to administer proper medications to Plaintiff, failing to comply with law and policies regarding the medical treatment of prisoners, and causing Plaintiff to be unable to seek medical treatment.

59.    Defendant Albino, director of the jail, exercised deliberate indifference and negligence in failing to provide adequate medical care to Plaintiff through failing to respond to his numerous medical department requests, failing to assign an agent or employee to provide Plaintiff with proper wound care, failing to assign an agent or employee to transfer Plaintiff to a medical facility for scheduled postoperative medical appointments, failing to assign an agent or employee to provide Plaintiff with the postoperative medications prescribed to Plaintiff, failing to promulgate a policy to treat inmates in need of wound care, failing to assign an agent or employee to address Plaintiff's numerous requests to the medical department, failing to establish and/or comply with law and policies regarding the medical treatment of prisoners, and causing Plaintiff to be unable to seek medical treatment.

60.    Defendant CFG Health Systems exercised deliberate indifference and negligence in failing to provide adequate medical care to Plaintiff through failing to assign an agent or employee to provide Plaintiff with proper wound care, failing to assign an agent or employee to transfer Plaintiff to a medical facility for scheduled postoperative medical appointments, failing to promulgate a policy to treat inmates in need of wound care, failing to assign an agent or employee to provide Plaintiff with the postoperative medications prescribed to Plaintiff, failing to assign an agent or employee to address Plaintiff's numerous requests to the medical department, failing to establish and/or comply with law and policies regarding the medical treatment of prisoners, and causing Plaintiff to be unable to seek medical treatment.

61.     Defendant CFG Health Systems had a policy or custom of denying pretrial detainees adequate medical care by failing to act affirmatively to provide disabled detainees with reasonable accommodations, failing to act affirmatively to transport detainees to medically necessary offsite doctor's appointments, failing to provision disabled detainees with showers, failing to establish and/or comply with law and policies regarding the medical treatment of prisoners, and failing to promulgate a policy or custom that ensured its employees and agents would follow the postoperative care instructions of detainees who had recently undergone invasive surgeries.

62.     Plaintiff is not currently aware of a specific written statement held by CFG that clearly states their policy of violating pretrial detainees' Fourteenth Amendment rights to adequate medical care; however, Plaintiff has herein alleged a well-pleaded factual basis from which the existence of a policy or custom can be inferred:[6]

   a.   CFG Health Systems was the primary entity acting under color of state law to provide Plaintiff and other pretrial detainees at Cumberland County Jail with medical treatment;

   b.   Plaintiff made repeated requests to CFG Health Systems for access to medically necessary services;

   c.   Plaintiff was clearly in need of adequate medical treatment because he was visibly disabled in conjunction with having been arrested and incarcerated only four days after a major surgery;

   d.   Plaintiff was denied reasonable accommodation for his disability, denied the provision of showers on account of his disability, denied transportation to medically necessary offsite

---

[6] *Green v. Olson*, No. 21-14144 (RMB-EAP), 2025 U.S. Dist. LEXIS 117444 (D.N.J. June 20, 2025).

doctor appointments, and denied treatment in accordance with the postoperative care instructions assigned by Plaintiff's orthopedic specialist;

e.  CFG Health Systems has paid out multiple settlements in claims related to inadequate medical treatment at Cumberland County Jail, indicating that this incident does not stand alone but rather is the result of an institutional pattern of failures to render adequate medical care to detainees at the Cumberland County Jail;[7]

f.  Less than two months after the events in this complaint, as a result of the United States Attorney General's findings of a pattern of Eighth and Fourteenth Amendment constitutional rights violations, Cumberland County was compelled to enter a consent decree agreeing to substantially change its medical treatment practices at the Cumberland County Jail;[8] and

---

[7] *See* John Paff, "Three More Cumberland Jail Inmate Suicide Cases Settle for a Total of $1,639,500," https://transparencynj.com/2023/01/26/three-more-cumberland-jail-inmate-suicide-cases-settle-for-a-total-of-1639500/ (Jan. 26, 2023) (noting settlements made by CFG with the estates of Gregory Kubiak, David Conroy, and Megan Moore, three inmates who died by suicide at Cumberland County Jail and whose estates alleged that those suicides were the result of CFG's deliberate indifference towards obvious medical need); *see also* John Paff, "Four Cumberland Jail suicide lawsuits settle for a total of $672,500", https://transparencynj.com/2022/05/03/four-cumberland-jail-suicide-lawsuits-settle-for-a-total-of-672500-two-others-are-settled-in-principle-and-one-is-stayed-pending-resolution-of-criminal-charges-against-a-corrections-officer/ (May 3, 2022) (noting settlements made by CFG with the estates of Robert Wayne Lewis, David Hennis, Jon Leon Watson, and Alissa Marie Allen, all inmates who died by suicide at Cumberland County Jail and whose estates alleged that those suicides were the result of CFG's deliberate indifference towards obvious medical need); *see also Colon v. Cumberland County DOC,* et al., No. 1:22-cv-02427 (D.N.J. 2023) (where CFG settled with inmate Jonathan Colon, who alleged that CFG's deliberate indifference towards his medical needs caused him to contract COVID-19 and suffer from Long COVID); *see also Archie v. County of Cumberland,* et al*.,* No. 1:21-cv-18334-NLH-AMD (where CFG settled with Shawn Archie, who alleged that CFG's deliberate indifference to his serious medical needs caused him to sustain serious injuries) [non-exhaustive list].

[8] The consent decree was signed by Defendant Albino. "Justice Department Reaches Settlement with Cumberland County Addressing Conditions at County Jail", U.S. Attorney's Office, District of New Jersey (May 17, 2023) https://www.justice.gov/usao-nj/pr/justice-department-reaches-settlement-cumberland-county-addressing-conditions-county; *see also* Proposed Consent Degree, Dkt 2-3, *United States vs. Cumberland County*, No. 1:23-cv-02655 (D.N.J. May 17, 2023).

g.  The deliberate indifference with which Plaintiff was met was the result of CFG Health System's widespread custom or policy of delaying or denying medical treatment for non-medical reasons.[9]

h.  In the alternative, the deliberate indifference with which Plaintiff's medical needs were met were the result of CFG Health System's absence of a policy or custom that required its agents and employees to follow the postoperative care instructions assigned to detainees by non-CFG Health Systems medical professionals.

63.  Defendant Albino is responsible for the deliberate indifference of CFG Health Systems towards Plaintiff's medical needs because, as director of the Cumberland County Jail, Albino had a non-delegable duty to provide Plaintiff with reasonable medical care. *McCormick v. City of Wildwood*, 439 F. Supp. 769, 776 (D.N.J.1977).

64.  Due to the foregoing, and by denying Plaintiff access to adequate medical care, failing to properly summon medical treatment, failing to provide medical treatment, interfering with the Plaintiff's proper course of treatment by removing his surgical cast and incarcerating him without reapplying another surgical cast, and/or exhibiting deliberate indifference to Plaintiff's rights by not acting on information which indicated that unconstitutional acts were occurring, and by causing Plaintiff to suffer serious personal injury, the Defendants deprived Plaintiff of rights, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution.

---

[9] The Third Circuit has "found deliberate indifference in situations where 'necessary medical treatment is delayed for non-medical reasons.'" *Lawson v. Camden Cty. Corr. Facility Med. Dep't*, No. 20-12346 (RMB-JS), 2021 U.S. Dist. LEXIS 32158 (D.N.J. Feb. 22, 2021), citing *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)

65.     The Defendants acted at all relevant times hereto willfully, wantonly, maliciously, and/or with such reckless disregard of consequences as to reveal a conscious indifference to the clear risk of serious injury to Plaintiff. As a direct and proximate result of these violations of Plaintiff's constitutional rights, he suffered the damages hereinbefore alleged.

        **WHEREFORE**, Plaintiff, John Cossaboon, demands judgment in his favor and against the defendants, for compensatory damages, attorney fees and costs, and such other and further relief as appears reasonable and just.

### COUNT TWO

**New Jersey Civil Rights Act - Deliberate Indifference and
Failure to Provide Adequate Medical Care
(All Defendants)**

66.     Plaintiff repeats and realleges the foregoing paragraphs of this complaint as if fully set forth herein.

67.     Each and every one of the named Defendants listed above was under a constitutional duty to provide reasonable adequate medical care to Plaintiff, an inmate in their charge.

68.     While incarcerated at the Cumberland Jail, Plaintiff required medical care for the postoperative wound on his foot, including but not limited to physical rehabilitation, wound care, and surgical aftercare.

69.     Wound care for Plaintiff's postoperative surgical wound was a serious medical need. *See Huggins* (holding that visibly bandage-wrapped wounds are a clear medical need).

70.     Interfering with the postoperative course of treatment prescribed to Plaintiff merely four days prior to his incarceration and intentionally denying Plaintiff access to that course of treatment was an act of deliberate indifference towards Plaintiff's serious medical needs.

71.     Defendant April Munson exercised deliberate indifference and negligence in failing to provide adequate medical care to Plaintiff through failing to properly diagnose and treat Plaintiff's wounds, failing to and/or refusing to provide proper wound care, failing to timely transfer Plaintiff to a medical facility for scheduled follow-up surgery appointments equipped to provide Plaintiff with the medical care required, failing to follow the follow-up surgical instructions provided by Plaintiff's prior doctor, failing to provide Plaintiff with clean wound dressings, failing to change Plaintiff's wound dressings, failing to administer the proper medications for wound care, failing to administer proper medications to Plaintiff, failing to comply with law and policies regarding the medical treatment of prisoners,  and causing Plaintiff to be unable to seek medical treatment.

72.     Defendant CFG Health Systems exercised deliberate indifference and negligence in failing to provide adequate medical care to Plaintiff through failing to assign an agent or employee to provide Plaintiff with proper wound care, failing to promulgate a policy to treat inmates in need of wound care, failing to assign an agent or employee to transfer Plaintiff to a medical facility for scheduled postoperative medical appointments, failing to assign an agent or employee to provide Plaintiff with the postoperative medications prescribed to Plaintiff, failing to assign an agent or employee to address Plaintiff's numerous requests to the medical department, failing to establish and/or comply with law and policies regarding the medical treatment of prisoners, and causing Plaintiff to be unable to seek medical treatment.

73.     Defendant Director Albino exercised deliberate indifference and negligence in failing to provide adequate medical care to Plaintiff through failing to assign an agent or employee to provide Plaintiff with proper wound care, failing to promulgate a policy to treat inmates in need of wound care, failing to assign an agent or employee to transfer Plaintiff to a medical facility for

18

scheduled postoperative medical appointments, failing to assign an agent or employee to provide Plaintiff with the postoperative medications prescribed to Plaintiff, failing to assign an agent or employee to address Plaintiff's numerous requests to the medical department, failing to establish and/or comply with law and policies regarding the medical treatment of prisoners, and causing Plaintiff to be unable to seek medical treatment.

74.    Defendant CFG Health Systems had a policy or custom of denying pretrial detainees adequate medical care by failing to act affirmatively to provide disabled detainees with reasonable accommodations, failing to act affirmatively to transport detainees to medically necessary offsite doctor's appointments, failing to provision disabled detainees with showers, failing to establish and/or comply with law and policies regarding the medical treatment of prisoners, and failing to promulgate a policy or custom that ensured its employees and agents would follow the postoperative care instructions of detainees who had recently undergone invasive surgeries.

75.    Plaintiff is not currently aware of a specific written statement held by CFG that clearly states their policy of violating pretrial detainees' Fourteenth Amendment rights to adequate medical care; however, Plaintiff has herein alleged a well-pleaded factual basis from which the existence of a policy or custom can be inferred.

76.    The actions and inactions of these Defendants demonstrated their conscious disregard for and their deliberate indifference to the serious medical needs of Plaintiff.

77.    Defendants, at all relevant times, acted under color of law to deprive Plaintiff's constitutionally protected rights including, but not limited to, the right to be free of cruel and unusual punishment, guaranteed by the New Jersey Constitution.

78.     The Defendants acted at all relevant times hereto willfully, wantonly, maliciously, and/or with such reckless disregard of consequences as to reveal a conscious indifference to the clear risk of serious injury to Plaintiff. As a direct and proximate result of these violations of Plaintiff's constitutional rights, he suffered the damages hereinbefore alleged.

     **WHEREFORE**, Plaintiff, John Cossaboon, demands judgment in his favor and against the defendants, for compensatory damages, reasonable attorney fees and costs, interest; and such other and further relief as appears reasonable and just.

### COUNT THREE

**Title II of the Americans with Disabilities Act, 42 U.S.C 12101, *et seq*.**
**(Defendant CFG Health Systems)**

79.     Plaintiff repeats and realleges the foregoing paragraphs of this complaint as if fully set forth herein.

80.     At all relevant times, the Cumberland County Jail was a "public entity" within the meaning of Title II of the Americans with Disabilities Act ("ADA"). The Department of Justice ("DOJ") guidance on Title II regulations "explicitly refers to a prison's provision of hygiene as being included under the statute's purview. Specifically, the DOJ explains that corrections systems are unique facilities under Title II because inmates cannot leave, and thus prisons must address the needs of inmates with disabilities by providing 'accessible toilet and shower facilities, devices such as a bed transfer or a shower chair, and assistance with hygiene methods for prisoners with physical disabilities.'" *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285 (3d Cir. 2019), quoting 28 C.F.R. pt. 35, App. A, at 663 (2017).

81.     Federal regulations define a disability as, among other things, a physical impairment that substantially limits one or more of the major life activities. "A physical impairment is a 'physiological disorder or condition, . . . or anatomical loss affecting one or more body

systems[,]' and 'major life activities' include walking and standing." *Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023), quoting 28 C.F.R. § 35.108.

82.    At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of Title II of the ADA. *See* 28 C.F.R. § 35.108*, see also* 42 U.S.C. § 12102. He had serious, chronic health conditions that substantially limited his major life activities, including a recent major surgery that necessitated the temporary use of a wheelchair, and he was incarcerated in Cumberland County Jail and thus qualified to participate in the programs, services, and facilities of DOC activities, including but not limited to, access to appropriate medical housing, provision of showers, appropriate medical care, and necessary medical treatment.

83.    The actions of Defendant CFG violate Title II of the ADA, which states, in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Public entities include state and local governments, their agencies, and their instrumentalities. 42 U.S.C. § 12131(1).

84.    Disability discrimination under Title II includes the refusal to make reasonable modifications to policies, practices, and procedures where necessary to ensure that persons with disabilities do not experience discrimination. 28 C.F.R. § 35.130(b)(7).

85.    Refusal to make reasonable accommodations is tantamount to denying access. *Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023).

86.    Defendant CFG Health Systems denied Plaintiff reasonable modifications necessary to avoid discrimination against him due to his disability by showing deliberate indifference to his repeated requests for provision of showers and failing to provide him with the essential medical

services necessary to prevent his health from precipitous decline, culminating with his chronic infection.

87.     Defendant CFG discriminated against Plaintiff because of his disability. They denied him requisite medical services, including but not limited to denying him medical housing, denying him access to his follow-up surgery appointments, denying him access to appropriate medical care, and denying him prompt response to medical emergencies, as detailed in the preceding paragraphs.

88.     Plaintiff's repeated requests to the medical department for reasonable accommodations to the accommodations, advantages, facilities, and privileges normally bestowed to pretrial detainees at the Cumberland County Jail as a result of his disability, and Defendant CFG's repeated refusals to make reasonable accommodations available to Plaintiff, constitute a failure to act despite knowledge that Plaintiff's protected rights were substantially likely to be violated.

89.     In repeatedly ignoring Plaintiff's repeated documented requests for reasonable accommodations, Defendant CFG was deliberately indifferent to Plaintiff's rights secured by the ADA.

90.     Defendant CFG's failure to provide Plaintiff with reasonable accommodations caused him unnecessary pain and suffering, increased the severity of his medical conditions, caused his successful surgery to become a failure, and caused the Plaintiff to suffer extreme and irreversible injury.

91.     Defendant CFG acted at all relevant times hereto willfully, wantonly, maliciously, and/or with such reckless disregard of consequences as to reveal a conscious indifference to the clear risk of serious injury to Plaintiff. As a direct and proximate result of these violations of Plaintiff's federally protected rights, he suffered the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff John Cossaboon demands judgment in his favor and against Defendant CFG, for compensatory damages, reasonable attorney fees and costs, and such other and further relief as appears reasonable and just.

## COUNT FOUR

### N.J.S.A 10:5-1 to 14.1
### New Jersey Law Against Discrimination
### (All Defendants)

92.    Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as if fully set forth herein.

93.    The New Jersey Law Against Discrimination (NJLAD), N.J.S.A 10:5-1 to 14.1, "relies on the same analytical framework as the ADA."[10]

94.    The Cumberland County Jail constitutes a place of public accommodation within the meaning of the NJLAD.

95.    Plaintiff is disabled within the meaning of the NJLAD. Plaintiff has, and had at the time of these events, a diagnosed and documented disability. He had serious, chronic health conditions that substantially limited his major life activities, including a recent major surgery that necessitated the temporary use of a wheelchair, and he was detained in Cumberland County Jail and thus qualified to participate in the programs, services, and facilities of DOC activities, including but not limited to, access to appropriate medical housing, appropriate medical care, and necessary medical treatment.

96.    The actions of Defendants violate the NJLAD, which provides:

All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public

---

[10] *Ramirez v. SWSP Custody Officers,* No. 20-3887 (NLH) (EAP), 2023 U.S. Dist. LEXIS 43469 (D.N.J. Mar. 15, 2023), *citing Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 536 n.12 (3d Cir. 2007). *See also Small v. Lanigan,* 58 NDLR P 113, 2019 U.S. Dist. LEXIS 3940, 2019 WL 145628, at *4 (D.N.J. Jan. 9, 2019); *D.G. v. Somerset Hills Sch. Dist.,* 559 F. Supp. 2d 484, 502 (D.N.J. 2008).

accommodation, public housing accommodation, and other real property without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, nationality, sex, gender identity or expression or source of lawful income used for rental or mortgage payments, subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right.

97.     Plaintiff was denied provision of showers on account of his disability, and Plaintiff experienced several instances where he complained of pain and was ignored, causing him to have significant trouble ambulating.

98.     Plaintiff repeatedly asked of all Defendants that reasonable accommodations for his disability be made for him to participate in the accommodations, advantages, facilities, and privileges normally bestowed to pretrial detainees at the Cumberland County Jail, and all Defendants repeatedly refused.

99.     Refusal to make reasonable accommodations is tantamount to denying access. *Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023).

100.    Plaintiff was denied the accommodations, advantages, facilities, and privileges normally bestowed to pretrial detainees at the Cumberland County Jail as a result of his disability.

101.    Plaintiff's repeated requests to the medical department for reasonable access to the accommodations and facilities normally bestowed to pretrial detainees at the Cumberland County Jail as a result of his disability, and Defendants' repeated refusals to make reasonable accommodations available to Plaintiff, constitute a failure to act despite knowledge that Plaintiff's protected rights were substantially likely to be violated.

102.    Defendants denied Plaintiff reasonable modifications necessary to avoid discrimination against him due to his disability by showing deliberate indifference to his repeated requests for

provision of showers and failing to provide him with the essential medical services necessary to prevent his health from precipitous decline, culminating with his chronic infection.

103.     N.J.S.A. 10:5-12(e) makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

104.     Defendant Director Albino is individually liable because he aided and/or abetted the discriminatory conduct of the Cumberland County Jail and its agents, including Defendants CFG and Munson.

105.     Defendant Albino's indifference and failure to act when he had a duty to do so emboldened and facilitated the discrimination and constitutes substantial assistance.

106.     The Defendants acted at all relevant times hereto willfully, wantonly, maliciously, and/or with such reckless disregard of consequences as to reveal a conscious indifference to the clear risk of serious injury to Plaintiff. As a direct and proximate result of these violations of Plaintiff's protected rights, he suffered the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff John Cossaboon demands judgment in his favor and against the defendants, for compensatory damages, reasonable attorney fees and costs, interest; and such other and further relief as appears reasonable and just.

## <u>COUNT FIVE</u>

### MEDICAL MALPRACTICE
### (All Defendants)

107.     Plaintiff repeats and realleges the foregoing paragraphs of this complaint as if fully set forth herein.

108.     While detained at the Cumberland Jail, Plaintiff required medical care for his serious, underlying chronic health conditions and medical care for the postoperative wound on his foot.

109.    Defendants CFG Health Systems and April Munson were negligent, deviated from the standard of care and committed medical malpractice when providing medical care to Plaintiff, because as a direct result of CFG and Munson's actions, Plaintiff did not receive proper medical treatment as the Defendants refused to provide him any wound care, proper postoperative surgical aftercare, proper mobility accommodations, proper antibiotic medication, and/or physical rehabilitation. As a result, Plaintiff's wound became chronically infected and his successful surgery was caused to turn into a failed surgery.

110.    The Defendants' negligence proximately caused Plaintiff's infection to worsen and spread, his wound to expand in size, and his successful surgery to become a failure, causing him severe pain, discomfort, multiple hospitalizations, and further loss of life's pleasures.

111.    Defendants rendered medically inappropriate treatment to Plaintiff that did not meet professional standards and resulted in permanent damage done to the Plaintiff.

112.    Defendants interrupted the existing treatment rendered unto Plaintiff by Plaintiff's orthopedic surgeon, and proceeded to render treatment inconsistent with Plaintiff's prior treatment.

113.    Upon information and belief, neither Defendant Nurse Munson nor any person employed by CFG Health Systems at the Cumberland Jail are orthopedic specialists; yet they deviated from the orthopedic care specifically prescribed to Plaintiff by an orthopedic specialist familiar with his medical history and treatment plan.

114.    Plaintiff was not allowed by Defendants to attend his follow-up appointment scheduled for him post-surgery, nor was he given equivalent surgical follow-up care by Defendants.

115.    Defendants owed Plaintiff a medical duty of care and had a position of professional care over Plaintiff.

26

116.    The Defendants' negligence increased Plaintiff's risk of harm from his preexistent conditions, and the increased risk of harm was a substantial factor in causing Plaintiff's injuries.

117.    Defendant CFG Health Systems is responsible for Nurse April Munson's medical malpractice under the doctrine of *respondeat superior*.

118.    Defendant CFG Health Systems had a policy or custom of denying pretrial detainees adequate medical care by failing to act affirmatively to provide disabled detainees with reasonable accommodations, failing to act affirmatively to transport detainees to medically necessary offsite doctor's appointments, failing to provision disabled detainees with showers, and failing to promulgate a policy or custom that ensured its employees and agents would follow the postoperative care instructions of detainees who had recently undergone invasive surgeries. Plaintiff is not currently aware of a specific written statement held by CFG that clearly states their policy of reckless negligence with regards to providing inmates with adequate medical care; however, Plaintiff has herein alleged a well-pleaded factual basis from which the existence of a policy or custom can be inferred.

119.    Defendant Albino acted with deliberate indifference to the medical malpractice of CFG and Nurse April Munson. As director of the jail, he cannot discharge the responsibility for providing adequate inmate healthcare.[11]

120.    Defendants breached their professional duty of care by deviating from accepted standards of care in the medical industry.

---

[11] *See Scott-Neal ex rel. Scott v. N.J. State Dep't of Corr.*, 841 A.2d 957 (N.J. Super. Ct. App. Div. 2004); *McCormick v. City of Wildwood*, 439 F. Supp. 769, 776 (D.N.J.1977) ("[A] jailer's duty to provide reasonable medical care is non-delegable. This duty attaches as soon as a prisoner is placed under the jailer's custody."); S*aint Barnabas Med. Ctr. v. Essex County*, 543 A.2d 34 (N.J. 1988) ("As a matter of both state and federal law, defendant Essex County had an absolute duty to see that [the prisoner] received medical treatment for his injuries."); *Marek v. Prof'l Health Servs., Inc.*, 432 A.2d 538 (N.J. Super. App.Div.), *certif. granted*, 443 A.2d 691, *appeal dismissed* 460 A.2d 645 (N.J. 1981) (holding that health care entity could not delegate to an independent medical contractor its duty of care in reading patient's x-ray).

121.    Defendants' breach of medical duty gave Plaintiff permanent physical injuries, emotional distress, large medical bills and a loss of life's pleasures.

122.    Had Defendants not interfered with Plaintiff's ongoing course of treatment prescribed by his orthopedic surgeon, Plaintiff would not have suffered the abovementioned damages.

      **WHEREFORE**, Plaintiff John Cossaboon demands judgment in his favor and against the defendants, for compensatory damages, reasonable attorney fees and costs, interest; and such other and further relief as appears reasonable and just.

## <u>COUNT SIX</u>

### EQUAL PROTECTION
### (All Defendants)

123.    Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as if fully set forth herein.

124.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that no state shall deny to any person within its jurisdiction equal protection of the laws.

125.    At all times relevant hereto, Plaintiff was a member of a protected class, *i.e.*, persons with disabilities.

126.    At all times relevant hereto, Plaintiff received treatment different from the treatment provided to other inmates. Defendants intentionally discriminated against Plaintiff on account of his disability. Specifically, Plaintiff was denied provision of showers on account of his disability, while similarly situated non-disabled detainees were freely provided with access to showers.

There was no rational basis for the difference in treatment because there is no penological interest in denying the provision of showers.[12]

127.    Plaintiff was denied adequate medical treatment on account of his disability, while similarly situated non-disabled detainees were not denied adequate medical treatment. There was no rational basis for the difference in treatment because there is no penological interest in denying adequate medical treatment.

128.    As a result, Plaintiff sustained great personal injury, deterioration of general, health, severe and intense pain and suffering, and emotional distress.

**WHEREFORE**, Plaintiff John Cossaboon demands judgment in his favor and against the defendants, for compensatory damages, reasonable attorney fees and costs, and such other and further relief as appears reasonable and just.

## V.    REQUESTED RELIEF

**WHEREFORE**, Plaintiff John Cossaboon respectfully requests:

A.   Actual and compensatory damages sufficient to make him whole;

B.  Punitive damages against all Defendants to punish them and deter further wrongdoing;

C.   Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law; and

D.   Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.


Dated: July 21, 2025                          Respectfully submitted,

                                              */s/ Karen L. Hoffmann*
                                              Karen L. Hoffmann, Esq.

---

[12] Under the New Jersey Administrative Code, "[i]nmates in general population shall be permitted to shower and shave daily, unless an emergency situation or security hazard exists." N.J.A.C. § 10A:14-2.2(a).

ELLENBERG LAW GROUP
ID No. 203412022
1500 JFK Blvd. Suite 1825
Philadelphia, PA 19102
(215) 790-1682
karen@sellenberglaw.com

**Karen L. Hoffmann, Esq.**
**ELLENBERG LAW GROUP**
**ID No. 203412022**
**1500 JFK Blvd. Suite 1825**
**Philadelphia, PA 19102**
**(215) 790-1682**
**karen@sellenberglaw.com**                           *Attorneys for Plaintiff John Cossaboon*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN COSSABOON,** ) | |
| ) | **Case No. 1:25-cv-02110-RMB-AMD** |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | |
| **CITY OF VINELAND,** *et al.*, ) | |
| ) | |
| *Defendants.* ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, Karen L. Hoffmann, hereby certify that, in accordance with F.R.C.P. 5, on this date I

served a true and correct copy of Plaintiff's Second Amended Complaint on the following by the

Court's CM/ECF system:

> Ryan Kelly, Esq.
> William F. Cook, Esq.
> Brown & Connery, LLP
>
> A. Michael Barker, Esq.
> Greg Paul DiLorenzo, Esq.
> Barker, Gelfand, James & Sarvas

Dated: July 21, 2025                    */s/ Karen L. Hoffmann*
                                        Karen L. Hoffmann, Esq.
                                        ELLENBERG LAW GROUP