[Docket Nos. 28, 29]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| JOHN COSSABOON,<br><br>    Plaintiff,<br><br>    v.<br><br>CHARLES E. ALBINO,<br>CFG HEALTH SYSTEMS, LLC,<br>and APRIL MUNSON,<br><br>    Defendants. | Civil Action No. 25-2110<br>(RMB/AMD)<br><br>**OPINION** |

**APPEARANCES**

LAW OFFICE OF KAREN L. HOFFMANN, LLC
Karen Hoffmann, Esq.
255 Kings Highway E.
Haddonfield, New Jersey 08033

 *Attorney for Plaintiff John Cossaboon*

BARKER, GELFAND & JAMES, P.C.
A. Michael Barker, Esq.
Greg Paul DiLorenzo, Esq.
Linwood Greene
210 New Road, Suite 12
Linwood, New Jersey 08221

 *Attorneys for Defendant Charles Albino*

DICKIE, McCAMEY & CHILCOTE, PC
Jeffrey H. Quinn, Esq.
1650 Arch Street, Suite 2110
Philadelphia, Pennsylvania 19103

 *Attorney for Defendants CFG Health Systems, LLC, and April Munson*

**RENÉE MARIE BUMB, Chief United States District Judge:**

This matter comes before the Court upon the Motions to Dismiss by Defendants Charles Albino ("Albino") [Motion (Docket No. 28); Albino Br. (Docket No. 28-2)] and CFG Health Systems, LLC ("CFG") and April Munson ("Munson" and, together with CFG, the "CFG Defendants," and, collectively with Albino, the "Defendants") [CFG Br. (Docket No. 29)]. Defendants seek the dismissal of the Second Amended Complaint [SAC (Docket No. 17)] by Plaintiff John Cossaboon (the "Plaintiff"). Plaintiff has opposed both motions [Pl.'s Albino Opp'n (Docket No. 30); Pl.'s CFG Opp'n (Docket No. 32)]. While the CFG Defendants did not submit a reply brief, Defendant Albino filed a reply brief in further support of his motion [Albino Reply (Docket No. 31)]. The Court has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' Motions to Dismiss will be **GRANTED**. Plaintiff's claims will be **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

## I.   FACTUAL BACKGROUND

This case arises out of the allegedly inadequate medical care received by Plaintiff for his injuries – sustained prior to being detained – during his pretrial detention in the Cumberland County Jail (the "Jail"). On September 21, 2021, Plaintiff was involved in a car accident and severely injured his lower extremities.

2

[SAC ¶ 8.][1] He required ongoing medical treatment, and, on March 23, 2023, Plaintiff underwent surgery to lengthen his left Achilles tendon. [*Id.*] He was discharged with instructions to wear a medical cast after the surgery, avoid bearing weight on his left ankle, and have his stitches removed in fourteen days. [*Id.* ¶ 9.]

Five days later, however, Plaintiff was arrested by Vineland police officers and transported to the Vineland Medical Center, where he was diagnosed with a postoperative infection and prescribed antibiotics. [*Id.* ¶¶ 10–11.] The medical team at the Vineland Medical Center, apparently at the direction of the police officers, removed Plaintiff's cast to search for contraband, but did not replace it after the search. Instead, they wrapped Plaintiff's ankle with an elastic bandage wrap. [*Id.* ¶ 15.]

Thereafter, Plaintiff was transported to the Jail where he was held for roughly one month in pretrial detention. [*Id.* ¶ 17.] During this month, Plaintiff alleges that he was not permitted to follow up with his primary care providers, return to the emergency room, or access his prescribed medication, despite his infection symptoms worsening. [*Id.* ¶ 18.] No one at the Jail or from CFG, the Jail's private medical contractor, assisted him in changing his wound dressing. And he was only given materials to change his wound dressing himself on only two or three occasions, despite the physician at Vineland Medical Center instructing him to change the dressing daily.

---

[1]     The operative Second Amended Complaint is Plaintiff's third iteration of his case. The scope of his claims has changed significantly with each iteration. For purposes of addressing the instant motion, the Court addresses only the allegations included in the Second Amended Complaint.

[*Id.* ¶¶ 21–22.]  Plaintiff also claims that he was unable to shower for the bulk of his detention because he could not get out of his wheelchair to do so.  No shower chair or other accommodation was provided.  [*Id.* ¶ 20.]

Plaintiff's surgical stitches were not removed during his detention, despite his repeated requests for a medical evaluation.  [*Id.* ¶¶ 24–27.]  He submitted a Medical Department Request Form on April 19, 2023, requesting that Munson provide him with his prescribed antibiotics, which he claimed he had been denied.  [*Id.* ¶ 28.]  He submitted two additional request forms just three days later requesting to have his stitches removed.  He also claimed that Munson "refuses to give me my pain pills, wrongfully gives antibiotics."  [*Id.* ¶ 29.]  Just two days later, on April 24, 2023, Plaintiff was released from the Jail.  [*Id.* ¶ 31.]

Upon his release, Plaintiff learned that his surgical wound had become infected, and he had his stitches removed.  [*Id.* ¶¶ 25, 31.]  The infection resulted in his hospitalization from April 28 to 29 and again from April 30 to May 5, 2023.  [*Id.* ¶ 32.]  Plaintiff alleges that the infection has proved to be chronic and persists to the present day.  [*Id.* ¶ 35.]  Plaintiff requires revision surgery on his left foot.  [*Id.* ¶ 36.]

Plaintiff also alleges that there is "a pattern of institutional failures relating to the Cumberland County Jail's healthcare system," relying on a U.S. Department of Justice ("DOJ") Civil Rights Division and District of New Jersey U.S. Attorney's Office ("USAO") investigation that determined in January 2021 that there was "reasonable cause to believe" that the jail "failed to take measures to prevent inmate suicides and provide adequate mental health care."  [*Id.* ¶ 38 (citing Press Release,

4

United States Attorney's Office, District of New Jersey, "Department of Justice Alleges Conditions at Cumberland County Jail Violate the Constitution," (Jan. 14, 2021) https://www.justice.gov/usao-nj/pr/department-justicealleges-conditions-cumberland-county-jail-violate-constitution.] And, in a complaint filed in May 2023, the U.S. government accused the Jail of constitutional violations related to its allegedly inadequate treatment of detainees with mental health conditions and opiate withdrawal. [*Id.* ¶ 39; Complaint ¶¶ 11–19, *United States v. Cumberland County Jail*, No. 23-2655 (D.N.J. May 17, 2023).] Plaintiff also claims that both CFG and Munson have been involved in prior litigation regarding the alleged inadequacy of the medical care they provided. [SAC ¶¶ 40–41.]

## II.    PROCEDURAL HISTORY

Based upon these facts, Plaintiff filed his original complaint (the "Original Complaint") in federal court on March 27, 2025 against the City of Vineland, the Vineland Police Department, Vineland Medical Center, Cumberland County Jail, Munson, Dr. Eric P. Blazar, Josiah Matro, and Officer Francisco Ledesma ("Ledesma"), as well as John Doe Defendants individually and in their capacity as Vineland police officers. [Compl. ¶¶ 4–13 (Docket No. 1).] Thereafter, Plaintiff filed his First Amended Complaint on April 28, 2025, which named the same defendants in addition to a social worker identified as "Murphy," CFG, Christa Bogan, Kim Segers, and Albino and Ronald D. Riggins ("Riggins"), in both their individual capacities and their official capacities as officials of the Cumberland County Jail. [FAC ¶¶ 5–19 (Docket No. 6).]

Defendants Cumberland County Jail, Albino, and Riggins submitted a pre-motion letter [Docket No. 12] in accordance with this Court's Individual Rules and Procedures on May 6, 2025, regarding their intention to file a motion to dismiss the First Amended Complaint.  In response, Plaintiff voluntarily agreed to dismiss several of his claims, including the official capacity claims against Albino, Riggins, Ledesma, and Murphy, and all claims against the City of Vineland, the Vineland Police Department, and the Cumberland County Jail [Docket No. 13].  The Court held a pre-motion conference to address the remaining issues raised in the parties' letters on May 20, 2025.  Plaintiff was granted leave to file the Second Amended Complaint, which he did on July 21, 2025.

The Second Amended Complaint names only Albino, CFG, and Munson as Defendants and purports to set forth the following causes of action:

(1) Deliberate indifference to serious medical need in violation of Plaintiff's Fourteenth Amendment rights against all Defendants [SAC ¶¶ 49–65];

(2) Deliberate indifference and failure to provide adequate medical care in violation of the New Jersey Civil Rights Act against all Defendants [SAC ¶¶ 66–78];

(3) Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA") against Defendant CFG only [SAC ¶¶ 79–91];

(4) Violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1 to 14.1 against all Defendants [SAC ¶¶ 92–106];

(5) Medical malpractice against all Defendants [SAC ¶¶ 107–22];

(6) Violation of the Equal Protection Clause of the Fourteenth Amendment against all Defendants [SAC ¶¶ 123–28].

Thereafter, Defendant Albino submitted a second pre-motion letter regarding his proposed motion to dismiss [Docket No. 20], to which Plaintiff responded [Docket No. 21]. On August 6, 2025, the Court scheduled an in-person pre-motion conference and directed the CFG Defendants – who had not yet been served – to be promptly served so that they could appear at the conference as well [Docket No. 22]. Munson was served on August 8, 2025 [Docket No. 24] and CFG was served on August 11, 2025 [Docket No. 23]. At the conference, the Court permitted Defendants to file their motions to dismiss, but directed the parties to focus their briefing on the federal causes of action only.[2]

Defendant Albino and the CFG Defendants moved to dismiss the Second Amended Complaint on September 17, 2025 and September 26, 2025, respectively. The briefing is now complete, and the motions are ripe for decision.

---

[2]    The Court previewed its intent to decline to exercise supplemental jurisdiction over Plaintiff's state law claims if the federal claims are dismissed. As the Court now finds that there are no properly pleaded federal claims appearing on the face of the Second Amended Complaint and no other basis for this Court's original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) (district court "may decline to exercise supplemental jurisdiction" over state law claims if the court "has dismissed all claims over which it has original jurisdiction"). The Court finds no extraordinary circumstances warranting an exercise of supplemental jurisdiction over those claims. *Hedges v. Musco*, 204 F.3d 109, 123–24 (3d Cir. 2000) (affirming district court's decision not to exercise supplemental jurisdiction over state law claim after all federal claims were dismissed and noting that district court "must decline to decide [ ] pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). The Court makes no finding as to the merits or procedural posture of such claims.

### III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint.  Courts will dismiss a complaint under Rule 12(b)(6) if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When reviewing a motion to dismiss, courts must accept the complaint's well pled factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom."  *Malleus*, 641 F.3d at 563 (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)).  Courts will not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 663.

A district court's role in reviewing the sufficiency of a complaint is thus limited: the issue is not "whether the plaintiffs will ultimately prevail" but "whether they are entitled to offer evidence to support their claims."  *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000).  "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim."  *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) (citation omitted).

8

Courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Courts may also consider documents "integral to or explicitly relied upon in the complaint." *In re Rockefeller Ctr. Prop., Inc. Secs. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (citations omitted). That includes "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Mator v. Wesco Distrib. Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Ben.*, 998 F.2d at 1196.

## IV.   DISCUSSION

The Court addresses the motions filed by Defendant Albino and the CFG Defendants separately.

### A. Defendant Albino's Motion to Dismiss

Defendant Albino challenges the Second Amended Complaint on two separate grounds. First, he argues that Plaintiff's claims against him are barred by the statute of limitations. Second, he contends that he cannot be individually liable based upon a theory of supervisory liability, and the Complaint fails to allege his personal and direct involvement. The Court addresses each argument in turn.

9

### i.     Plaintiff's Claims against Albino are Time Barred and Relation Back Does Not Apply

Plaintiff's constitutional claims against Albino (Counts One and Six) are asserted pursuant to 42 U.S.C. § 1983.  Section 1983 does not in itself confer any rights.  Rather, a plaintiff must ground his claims in a right conferred by the Constitution or the laws of the United States.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Fagan v. City of Vineland*, 22 F.3d 1296, 1310 (3d Cir. 1994).  And while Section 1983 provides the federal cause of action, state law "determines when the claim accrues" and "provides the statute of limitations applicable to a section 1983 claim."  *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).  Section 1983 claims are characterized as personal injury claims and are thus governed by the applicable state's statute of limitations for personal injury claims.  *Id.*  The parties agree that New Jersey is the applicable state here.  Under New Jersey law, personal injury claims are subject to a two-year statute of limitations.  *Id.* (citing N.J.S.A. § 2A:14-2).

Plaintiff's claims regarding his alleged mistreatment while detained at the Jail accrued, at the latest, when he was released on April 24, 2023.  The Original Complaint was timely filed on March 28, 2025.  Defendant Albino, however, is neither mentioned nor described anywhere in that complaint.  He was named as a defendant for the first time in the First Amended Complaint [Docket No. 6], filed on April 28, 2025 – four days after the two-year statute of limitations expired.  Plaintiff concedes that the statute of limitations expired prior to the filing of the First Amended

10

Complaint [Pl.'s Albino Opp'n at 2] but contends that the relation back doctrine applies to salvage his claims.

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).  An amendment can relate back to the date of the original pleading when the law that provides the applicable statute of limitations allows relation back, and the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original pleading. FED. R. CIV. P. 15(c)(1)(A), (B).  Relation back is also permitted where "the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C).

According to Plaintiff, Albino should have known that he would be named as a defendant in this action because he, as director of the Jail, had notice of the Original Complaint as of April 7, 2025, when the Jail was served.  [Pl.'s Albino Opp'n at 3.] In other words, he seeks to impute the Jail's notice to Albino because he "shares a sufficient nexus of interests" with the Jail and because the two parties shared attorneys.

11

[*Id.* (citing *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 189, 200 (3d Cir. 2001).]

Even assuming that the Jail's notice of the action could be imputed to Albino, notice alone is insufficient to establish relation back. Under the plain language of Rule 15(c), Plaintiff must also establish that Albino "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(ii). The only allegations concerning the Jail in the Original Complaint involve its role as Munson's purported employer and supervisor.[3]  [Compl. ¶¶ 8–9, 30.] There is nothing in the Original Complaint that suggests Plaintiff intended to name the director of the Cumberland County Jail as a defendant, even if he did have notice that the suit was filed against the Jail. Indeed, aside from Munson, the Original Complaint made no attempt to name any other Cumberland County Jail employees or officials.

To the extent the Original Complaint included conclusory allegations of unconstitutional policies and customs [*id.* ¶ 52], those allegations address only the municipality's liability. Any claim against Albino in his official capacity would have been duplicative of the claims already asserted against the Jail. *See Garcia v. Phila. Dist. Attorney's Off.*, 2023 WL 3750604, at *2 (3d Cir. June 1, 2023) (citing *Kentucky v.*

---

[3]    As will be explained in further detail herein, Plaintiff later discovered that CFG – not the Jail – employed Munson. For that reason, CFG was newly named as a defendant in the First Amended Complaint.

12

*Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")).

Even more critically, there is neither allegation nor argument supporting a "mistake concerning the proper party's identity." Plaintiff argues that relation back is proper "whether the mistake is based on lack of knowledge or mere misnomer." [Pl.'s Albino Opp'n at 4 (quoting *Arthur v. Maersk, Inc.*, 434 F.3d 196, 209 (3d Cir. 2006)).] The Court does not disagree with this proposition. But there is nothing in any of the pleadings that suggests that Plaintiff lacked knowledge of the fact that the Cumberland County Jail had a director and that said director had a name. Yet, he failed to ascertain the name of the director before filing the Original Complaint, despite his claims accruing nearly two years prior, or to set forth why he could not ascertain the director's name prior to the expiration of the statute of limitations. He did not even bother to describe the director – or any other supervisory official at the jail, such as the warden – as a fictitious John Doe party.

New Jersey's fictitious party rule permits relation back, if at the time the complaint was filed, "the defendant's true name is unknown." N.J. Ct. R. 4:26-4. To properly invoke the fictitious party rule, the following conditions must be met:

> First, the plaintiff must not know the identity of the defendant said to be named fictitiously. Second, the fictitiously-named defendant must be described with appropriate detail sufficient to allow identification. Third, a party seeking to amend a complaint to identify a defendant previously named fictitiously must provide proof of how it learned the defendant's identity. Fourth, although not expressly stated in the Rule, it is well-settled that the Rule is unavailable to a party that does not act diligently in identifying the defendant.

*Albibi v. Tiger Mach. Co.*, 2014 WL 1779360, at *3 (D.N.J. Apr. 30, 2014) (quoting

*Sarmineto v. St. Mary's Hosp. Passaic*, 2012 WL 5250219, at *4 (D.N.J. Oct. 23, 2012)).

Plaintiff has failed to establish any of these conditions.  Plaintiff has not alleged

that it did not know the director's identity.  Nor has the director been described as a

fictious party with any detail whatsoever, let alone sufficient detail to allow

identification.  In fact, the only fictitious parties named in the Original Complaint are

John Doe officers who "were employees or agents of Defendant the City of Vineland

who participated in, supervised, and/or had knowledge of and failed to intervene in

the denial of prompt medical care required by Plaintiff."   [Compl. ¶ 13.]   This

description in no way applies to Albino, who is not affiliated with the City of Vineland.

*See Cruz v. City of Camden*, 898 F. Supp. 1100, 1111–12 (D.N.J. 1995) ("Due to the lack

of specificity in the complaint, neither the attorney nor the officers could have known

that but for a mistake of identity they would have been named rather than any of the

many other officers at their place of employment.  Relation back must therefore be

rejected since I can find no reason how the proposed parties could have been placed

on notice that a claim was being asserted against them in particular.").   Nor has

Plaintiff offered any explanation as to how he learned Albino's identity or what

diligence he undertook to identify him.  Plaintiff cannot avail himself of the fictitious

party rule.

Here, Plaintiff concedes that his claims against Albino were untimely filed.

The question then becomes whether the claims against Albino asserted for the first

time in the untimely First Amended Complaint relate back to the Original Complaint.

14

For the reasons set forth above, the Court finds that they do not. Nothing in the Original Complaint supports a finding that Albino "knew or should have known" that he would be named "but for a mistake concerning [his] identity." FED. R. CIV. P. 15(c)(1)(C). Accordingly, the Section 1983 claims against Albino must be dismissed.

### ii.   Plaintiff Fails to Allege Any Factual Basis to show Albino's Direct, Personal Involvement

Even assuming Plaintiff's claims against Albino were timely, which they are not, the Second Amended Complaint fails to state a viable claim against him in his individual capacity. Plaintiff cannot base its Section 1983 individual capacity claims against Albino solely on his position as the director of the Jail. It is black letter law that "vicarious liability is inapplicable to [Section] 1983 suits" and that, instead, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). The Supreme Court expressly rejected the proposition "a supervisor's mere knowledge of his subordinate's [unconstitutional conduct] amounts to the supervisor's violating the Constitution." *Id.*

In other words, "[i]t is elementary that a defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated on a theory of respondeat superior." *DeGroat v. DeFebo*, 87 F. Supp. 3d 706, 724 (M.D. Pa. 2015) (citing *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005)). Plaintiff may "demonstrate personal involvement through 'allegations of personal direction or of actual knowledge and acquiescence.'" *Id.* (quoting *Rode v. Dellarciprete,* 845 F.2d

15

1195, 1207 (3d Cir. 1988)).    A supervisory public official, like Albino, has no "affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986) (citing *Rizzo v. Goode,* 423 U.S. 362, 375–77 (1976)).    This is so "even where a pattern of constitutional violations by subordinates is shown, . . . unless [the supervisory officials] have played an 'affirmative part' in that misconduct." *Id.* (citing *Rizzo*, 423 at 377).

Here, there are no allegations whatsoever of affirmative conduct or involvement by Defendant Albino.    The Second Amended Complaint conclusorily alleges that Albino, along with the CFG Defendants, "did not allow the Plaintiff to follow up with his primary care provider," "allow him to return to the emergency room," or give him his medications.    [SAC ¶ 18.]    But noticeably absent from the pleadings are any allegations that Albino was aware of Plaintiff's circumstances at all, let alone that he was made aware of Plaintiff's requests for medications or treatment and refused them. Plaintiff also alleges, once again conclusorily, that Albino "exercised deliberate indifference and negligence in failing to provide adequate medical care to Plaintiff," despite, once again, including no allegations that Albino was even aware of Plaintiff's confinement, let alone of his medical needs or requests.    [*Id.* ¶¶ 59, 73.]

Based on the allegations in the Second Amended Complaint, there is nothing that establishes or even suggests that Albino himself directly participated in violating Plaintiff's rights, directed CFG, Munson, or anyone else to violate them, or even had knowledge of and acquiesced in his subordinates' violations.    *See A.M. ex rel. J.M.K. v.*

16

*Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Albino is only liable for his "own misconduct." *Iqbal*, 556 U.S. at 677. Therefore, to state an individual liability claim against him, Plaintiff must plead that Albino, "through [his] own individual actions," violated Plaintiff's constitutional rights. *Id.* He clearly has not done so.

Nor does Plaintiff allege that Albino himself, "with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused" Plaintiff's injuries. *A.M.*, 372 F.3d at 586. At most, Plaintiff alleges, again in conclusory fashion, that during his confinement "Defendant Director Albino created and/or permitted a policy, practice, or custom in the jail under which unconstitutional acts were perpetrated on Plaintiff, including the denial of medical care by Defendants CFG and April Munson." [SAC ¶ 43.] But this lacks any factual support and is nothing more than a "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements" that is insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 663.

Critically, Plaintiff identifies no well-pled factual allegations regarding the nature or even the existence of such a policy, let alone that Albino himself established the policy and that the policy directly caused Plaintiff's harms. At most, he points to the DOJ/USAO investigation that culminated years <u>prior</u> to Plaintiff's detention at

17

the Cumberland County Jail – and, according to Albino,[4] long before he became the Jail's director – where the Jail was found to have inadequate measures in place to address the needs of detainees with mental health conditions, including suicidal ideations, and opiate withdrawal. [*Id.* ¶¶ 38, 39.] But Plaintiff does not fall into either of these categories of detainees and Plaintiff does not allege that he does. For good reason: the findings of that investigation have no bearing on whether there was a policy in place years later to provide inadequate medical treatment to detainees in Plaintiff's condition. And, critically, there are no well-pled allegations of Albino's personal involvement or own affirmative misconduct that could support an individual capacity claim against him.

Plaintiff's claims amount to no more than dressed up vicarious liability claims or municipal liability "policy and custom" claims under Section 1983 under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). But neither of these theories support the individual capacity Section 1983 claims asserted against Albino. Accordingly, even if not time barred, Plaintiff's Section 1983 claims against Albino must be dismissed for failure to state a claim.

## B. The CFG Defendants' Motion to Dismiss

The CFG Defendants challenge the Second Amended Complaint on several grounds. First, CFG argues that Plaintiff's claims against it are barred by the statute

---

[4]    Plaintiff has not alleged when Albino became the director of the Cumberland County Jail. Nor has he disputed Albino's representation to the Court in his briefing.

of limitations.    Second, the CFG Defendants contend that the claims should be dismissed for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).    Finally, they argue that Plaintiff's Section 1983 and ADA claims against them must be dismissed for failure to state a claim.    The Court addresses each argument in turn.

### i.    Plaintiff's Claims against CFG are Time Barred and Relation Back Does Not Apply

Plaintiff asserts two Section 1983 claims (Counts One and Six) and an ADA claim (Count Three) against CFG.    As addressed above, Section 1983 claims are subject to a two-year statute of limitations.    Like Section 1983, the ADA does not contain a statute of limitations.    Therefore, New Jersey's two-year statute of limitations for personal injury claims once again governs.  *Abulkhair v. PPI / Time Zero, Inc.*, 398 F. App'x 710, 711 (3d Cir. 2010); *Somerset v. Univ. of Med. & Dentistry of New Jersey*, 2022 WL 2289561, at *2 (D.N.J. June 24, 2022).

Like Albino, CFG was first named as a defendant in the untimely First Amended Complaint.    Plaintiff, once again, argues that the addition of CFG relates back to the timely Original Complaint.    In the context of CFG, however, there was in fact "a mistake concerning the proper party's identity."    FED. R. CIV. P. 15(c)(1)(C)(ii).    Plaintiff has explained that he initially believed that Munson was employed by the Jail and so named that entity as a defendant in the Original Complaint.    Upon serving the Jail, Plaintiff was informed that Munson was in fact a CFG employee.  [Pl.'s CFG

19

Opp'n Ex. A.]  Thereafter, Plaintiff amended his pleadings to correct his prior mistake and name Munson's true employer.

The thornier question is whether CFG "received such notice of the action that it will not be prejudiced in defending on the merits" within "the period provided by Rule 4(m) for serving the summons and complaint."  FED. R. CIV. P. 15(c)(1)(C). Munson and CFG were both served in August 2025, long after the statute of limitations and the 90-day period for service provided by Rule 4(m) had expired.

Plaintiff, however, contends that the Jail's notice of the Original Complaint should be imputed to CFG because of their contractual relationship, claiming this relationship is sufficient to establish an identity of interest between the parties.  [Pl.'s CFG Opp'n at 3–4.]  "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."  *Singletary*, 266 F.3d at 197 (quoting 6A Charles A. Wright *et al.*, *Federal Practice and Procedure* § 1499, at 146 (2d ed. 1990)).  "The identity of interest method requires the plaintiff to demonstrate that the circumstances surrounding the filing of the lawsuit permit the inference the notice was actually received by the parties sought to be added as defendants during the relevant time period."  *Miller v. Hassinger*, 173 F. App'x 948, 956 (3d Cir. 2006).

The Court finds the analysis in *Benussi v. Luzerne Cnty.*, 2018 WL 4110559, at *6–7 (M.D. Pa. Aug. 29, 2018), to be instructive on this issue.  Like here, *Benussi* involved a plaintiff's medical treatment while being held in a detention facility. The plaintiff sued the medical providers employed by a private entity that contracted

20

with the prison to provide medical care at the facility, as well as the private entity itself. These "medical defendants" argued that the claims against them were time-barred because they did not relate back to the original timely complaint. Though the plaintiff had "not alleged that any of the Medical Defendants received actual notice of his action within the 90-day window," he argued that "the contractual relationship between CCS and the prison . . . creates an 'identity of interest' such that service on the prison provided constructive notice to CCS and CCS's employees." *Id.* at *6. This is precisely the argument raised by Plaintiff here.

The *Benussi* court explained that "[t]he identity of interest method [for relation back] requires the plaintiff to demonstrate that the circumstances surrounding the filing of the lawsuit permit the inference the notice was actually received by the parties sought to be added as defendants during the relevant time period." *Id.* (quoting *Miller*, 173 F. App'x at 956). The court observed that "[a]lthough the Third Circuit has not directly addressed whether a contract between a prison and an independent medical provider creates an identity of interest, the weight of analogous authority suggests it does not." *Id.* (collecting cases).

The Court agrees. Plaintiff "fails to allege facts that, taken as true, would allow [the Court] to infer notice imputed from [the Jail] to [CFG] within 90 days of filing his original complaint." *Id.* at *7. The Second Amended Complaint alleges only that CFG "is a private medical care provider who has provided medical and mental health services at the Cumberland County Jail since 2013." [SAC ¶ 17.] The pleadings are silent as to whether the Jail and CFG are "so closely related in their business

21

operations or other activities that the institution of an action against [the jail] serves to provide notice of the litigation to [CFG]." *Singletary*, 266 F.3d at 197. The contractual relationship between the parties alone – the parameters of which are not alleged – is insufficient to infer an identity of interest sufficient to impute notice to CFG within the statute of limitations and within the 90-day service period. *Benussi*, 2018 WL 4110559, at *6–7; *see also Camps v. Scholtz*, 2020 WL 1330192, at *9 (D.N.J. Mar. 23, 2020) (finding that "private entity and private employees under contract to provide services to the county jail" did not share "a sufficient identity of interest" with the jail to "impute notice of the original pleading").[5] Without such requisite notice or further elucidation of that identity of interest, the claims against CFG do not relate back to the timely filed Original Complaint and must be dismissed as barred by the statute of limitations.

### ii.    Untimely Service Bars Plaintiff's Claims Against the CFG Defendants

The CFG Defendants urge the Court to dismiss the claims against them for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).

---

[5]    By contrast, in *Perry v. Christensen*, the court imputed a prison's notice of litigation to the prison's private medical contractor after noting that the medical contractor and the prison shared the same building and the prison raised cross claims for contribution and indemnification against the contractor. 2017 WL 3623742, at *2–3 (D.N.J. Aug. 23, 2017). What's more, the medical contractor did not claim to be unaware of the lawsuit until it was served. *Id.* at *3. The court found that, under those circumstances, it was "implausible that the prison defendants kept [the contractor] in the dark about [the] lawsuit for months, and waited until the filing of the First Amended Complaint before notifying, or relied on Plaintiff to notify, [it] of the lawsuit." *Id.* at *3. No such circumstances are alleged in the Second Amended Complaint.

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." FED. R. CIV. P. 4(m).  "Even absent good cause, the 'court must *consider* whether to grant a discretionary extension.'" *M. K. by & through Barlowe K. v. Prestige Acad. Charter Sch.*, 751 F. App'x 204, 207 (3d Cir. 2018) (emphasis in original) (quoting *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997)).

The Original Complaint, filed on March 27, 2025, named Munson as a defendant, yet she was not served until August 8, 2025 – 134 days later.  [*See* Docket No. 24.][6]  Plaintiff claims that it had good cause for its untimely service on Munson because it attempted to diligently serve her on April 7, 2025 only to discover that she was not employed by the Jail.  [Pl.'s CFG Opp'n at 7.]  But this does not explain why it took Plaintiff another 123 days – and a Court Order [Docket No. 22] – to serve her.  As for CFG, it was first named as a defendant in the First Amended Complaint on April 28, 2025, yet was not served until August 11, 2025 [Docket No. 23] – 105 days

---

[6]      "It is blackletter law that '[f]iling an amended complaint does not toll the Rule 4(m) service period" for an original complaint." *Moore v. Walton*, 96 F.4th 616, 626 (3d Cir. 2024) (quoting 4B Charles A. Wright et al., *Federal Practice and Procedure* § 1137 (4th ed. 2015); citing *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006) ("[T]he . . . period provided by Rule 4(m) is not restarted by the filing of an amended complaint")).  "At best, adding a new party through an amended complaint initiates a new . . . timetable for service upon the added defendant [only]." *Id.* (cleaned up).

later and, even then, only after ordered to do so by this Court. Plaintiff provides no explanation at all for this delay. Plaintiff has not established good cause for his failure to timely serve either of the CFG Defendants.

Nonetheless, the Court considers, as it must, whether to grant a retroactive discretionary extension of the time to effectuate service. *M. K.*, 751 F. App'x at 207. The Court declines to do so here. Plaintiff urges the Court to consider "actual notice of the legal action; prejudice to the defendant; the statute of limitations on the underlying causes of action; the conduct of the defendant; and whether the plaintiff is represented by counsel," in addition to any other relevant factors. [Pl.'s CFG Opp'n at 8 (citing *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009)).] The Court has done so and finds that a discretionary extension is not appropriate under these circumstances.

First, Plaintiff is represented by counsel. Additionally, neither Munson nor CFG had actual notice of the claims against them until after the expiration of the statutes of limitations. Plaintiff never requested an extension of the time to effectuate service before the time period expired and, despite appearing before the Court after the filing of the First Amended Complaint, Plaintiff still did not bother to serve the CFG Defendants so that they could participate in the proceedings. Only when the Court intervened and directed Plaintiff to do so did he finally serve them. As "unfortunate" as it may be "that the statute of limitations now bars [Plaintiff's] claims against the [CFG Defendants], that is a risk of suing at the deadline and failing to timely serve the defendants." *M. K.*, 751 F. App'x at 207 (citing *MCI Telecomms. Corp. v. Teleconcepts,*

24

*Inc.*, 71 F.3d 1086, 1098 (3d Cir. 1995) ("[T]he court has discretion to dismiss the case even if the refiling of the action is barred.")).  For these reasons, and because the Court finds, as set forth below, that Plaintiff's allegations fail to state a claim, the Court finds that a discretionary extension is not appropriate.  Accordingly, Plaintiff's Section 1983 and ADA claims against the CFG Defendants must be dismissed without prejudice pursuant to Rule 4(m).

> ### iii.   The Section 1983 Claims Fail to Allege Deliberate Indifference to Plaintiff's Serious Medical Needs

Plaintiff claims that the CFG Defendants violated his Fourteenth Amendment rights by providing him with inadequate medical care and denying him equal protection under the law due to his disability.  These claims are asserted through Section 1983.  The parties appear to agree that the heart of both Plaintiff's Equal Protection claim and his inadequate medical care claim is the allegation that the CFG Defendants were deliberately indifferent to his serious medical needs.[7]  [CFG Br. at 5–6; Pl.'s CFG Opp'n at 9.]

Deliberate indifference to the serious medical needs of prisoners is proscribed by the U.S. Constitution.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (addressing the Eighth Amendment rights of convicted prisoners); *see also Natale v. Camden Cnty. Corr.*

---

[7]   Plaintiff also alleges that his Equal Protection claim is premised upon the alleged denial of daily showers due to his disability [SAC ¶ 126].  To the extent that Plaintiff asserts this allegation against the CFG Defendants, it fails to state a claim.  Both CFG and Munson were contracted to provide medical services at the jail.  There are no allegations that even remotely suggest that Munson or CFG were in any way involved in determining Plaintiff's showering schedule or protocol.

*Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (extending *Estelle* to analogous Fourteenth Amendment rights of pretrial detainees).   To state a constitutional claim under Section 1983 for inadequate medical care, a "prisoner must 'show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Montanez v. Price*, 154 F.4th 127, 140 (3d Cir. 2025).   The parties do not dispute the first element.   "As for the second, a prison official acts with 'deliberate indifference' if he knows of the serious medical need yet disregards it by failing to act reasonably." *Id.* at 140–41 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The CFG Defendants contend that Plaintiff has alleged no facts to support deliberate indifference.  The Court agrees.  At most, Plaintiff's allegations may amount to medical negligence or malpractice.[8]  But "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106.  "'[M]ere disagreement as to the proper medical treatment' is also insufficient." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)).

The only well-pled factual allegations regarding Munson or CFG's conduct involve medical request forms allegedly submitted to or about Munson in the days leading up to Plaintiff's release from the Jail.  The first form demanded that Munson prescribe him antibiotics, which he claimed he had been denied.   [SAC ¶ 28.]

---

[8]     To be clear, the Court makes no findings as to whether Plaintiff has adequately pled a negligence or malpractice claim.

But Plaintiff does not allege who initially denied his request for antibiotics. And there is no allegation that Munson, a nurse, was even able to prescribe Plaintiff medications. Just days later, Plaintiff allegedly complained that Munson "refuses to give me my pain pills, wrongfully gives antibiotics." [*Id.* ¶ 30.] This suggests that Munson did in fact give Plaintiff antibiotics when requested. It is unclear whether or not pain medication was prescribed to Plaintiff or when he requested the pain medication.

In any event, these allegations amount to no more than "mere disagreement between the prisoner and medical personnel over the proper course of treatment," which falls short of deliberate indifference. *Montanez*, 154 F.4th at 141. Similarly, as currently pled, Plaintiff's allegations that his stitches were not timely removed are – at most – medical malpractice, not deliberate indifference. As alleged by Plaintiff, the CFG Defendants provided some level of medical care, such as providing antibiotics and replacement wound dressings. "Deliberate indifference is generally not found when some level of medical care has been offered to the inmate." *Thomas v. Fed. Bureau of Prisons*, 2018 WL 4636208, at *5 (W.D. Pa. Sept. 27, 2018). Plaintiff's allegations that his care fell short in certain respects, such as not prescribing pain medication or permitting him to see his primary care doctor or return to the emergency room, "reflect differences in judgment between [Plaintiff] and [the CFG Defendants] about appropriate medical treatment, or at most amount to medical malpractice, neither of which is cognizable under" the Fourteenth Amendment. *Montanez*, 154 F.4th at 142 (considering allegations that medical providers denied plaintiff pain medication and refused to order an MRI) (citing *Estelle*, 429 U.S. at 106; *Spruill*,

372 F.3d at 235); *see also Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) ("prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners.").

The sparse allegations as to Plaintiff's allegedly inadequate medical care are insufficient to support his Fourteenth Amendment claims. They, at most, suggest medical negligence or malpractice. Accordingly, Plaintiff's Fourteenth Amendment claims, asserted under Section 1983, must be dismissed.

### iv.    CFG Cannot Be Sued Under Title II of the ADA

The Second Amended Complaint alleges that Defendant CFG violated Title II of the ADA. "Title II of the ADA prohibits a 'public entity' from discriminating against disabled people, including by denying them equal access to their 'services, programs, or activities.'" *Montanez*, 154 F.4th at 144 (quoting 42 U.S.C. § 12132). A "public entity" means "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(1).

Binding Third Circuit precedent unequivocally precludes Title II claims against a private contractor that provides medical services to state prisoners. *Montanez*, 154 F.4th at 145 ("There is no question that [Wellpath] cannot be sued under Title II. Even though Wellpath contracts with the Commonwealth to perform a traditional government function—providing medical services to state prisoners—that alone is not enough to transform a private corporation into an 'instrumentality of a State.'");

28

*see also Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) (finding that private contractor that provided medical services for state prisoners could not be sued under Title II, reasoning that "a private corporation is not a public entity merely because it contracts with a public entity to provide some service.").

Plaintiff recognizes this, yet he argues "for a good-faith change in the law." [Pl.'s CFG Opp'n at 13–14.]  The Court will not deviate from binding precedent. Accordingly, because CFG is not a public entity that can be sued under Title II of the ADA, Plaintiff's ADA claim must be dismissed.

## V.   CONCLUSION

For the foregoing reasons, the Motions to Dismiss by Defendant Albino and the CFG Defendants are **GRANTED**.  The Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.  Plaintiff's federal claims are **DISMISSED WITHOUT PREJUDICE** for the reasons set forth herein.  Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** as the Court declines to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3).  Plaintiff shall have thirty (30) days to file an amended complaint.[9]  In the event that Plaintiff chooses not to file an amended complaint, he shall promptly advise the Court.  If no timely amended complaint is submitted, the Court will enter a final order and judgment in

---

[9]   While the Second Amended Complaint is already Plaintiff's *third* opportunity to adequately plead its claims and include all facts pertinent to his case, this is the first time that the Court has ruled on the adequacy of the pleadings.  Accordingly, the Court will grant Plaintiff one final opportunity to amend his pleadings to remedy the deficiencies identified in this Opinion if he so chooses.

29

this action in accordance with Federal Rules of Civil Procedure 54 and 58, which dismisses Plaintiff's federal claims with prejudice and declines supplemental jurisdiction over Plaintiff's state law claims.  Plaintiff will then have thirty (30) days to bring his state law claims in state court.  *See* 28 U.S.C. § 1367(d) (tolling statute of limitations period "while the [supplemental state law] claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").[10] An accompanying Order has been issued [Docket No. 33].

**/s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

DATED: <u>May 1, 2026</u>

---

[10]     The Court reiterates that it makes no finding as to the merits, timeliness, or procedural posture of Plaintiff's state law claims.